IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEY DAVID MCMURRAIN, JR.,
M.D.,

    Plaintiff,

      v.

SCHINDLER ELEVATOR
CORPORATION, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:04-CV-2747-TWT

## ORDER

    This is a personal injury action.  It is before the Court on Defendant Childress

Klein Properties, Inc. and 999 Peachtree Associates, LLP's Motion for Summary

Judgment [Doc. 70] and Defendant Schindler Elevator Corp.'s Motion for Summary

Judgment [Doc. 74].  For the reasons set forth below, the Defendants' motions are

GRANTED.

## I. BACKGROUND

    This action involves an injury sustained at 999 Peachtree Street in Atlanta,

Georgia.  The building was owned by Defendant 999 Peachtree Associates, LLP and

managed by Defendant Childress Klein Properties, Inc.  The contract to service and

T:\ORDERS\04\McMurrain\msjtwt.wpd

maintain the building's elevators was performed by Defendant Schindler Elevator Corp.

On January 28, 2003, the Plaintiff, Dr. Key David McMurrain, visited the building to meet with lawyers representing his former employer, Proctor & Gamble. Upon returning to the building after lunch, he entered the building's lobby and approached the elevators.  As the Plaintiff was entering elevator no. 9, the elevator doors closed on him, striking both his shoulders and pinning him between the doors. The Plaintiff testified that he pulled himself out of the doors, falling backwards and against the wall facing the elevators.  (McMurrain Dep. at 20-24.)

A building security guard, Daniel Chapman, heard a report that someone appeared to be having a heart attack in the elevator lobby and responded to the scene. (Chapman Dep. at 8.)  There, he observed the Plaintiff leaning against the wall clutching his chest.  (Id.)  He called another security guard, Miki Jones, to come and assist him and then went to retrieve the first aid kit.  When he returned to the Plaintiff, he offered to administer first aid or to call 911.  The Plaintiff declined medical treatment, however, and proceeded upstairs to his meeting using elevator no. 11.  (Id.; McMurrain Dep. at 25; Jones Dep. at 14.)

The parties dispute whether the Plaintiff identified his cause of injury at that time.  The Plaintiff claimed that he informed the security guard that he had been struck

by the elevator doors.  (McMurrain Dep. at 25.)  Chapman stated that the Plaintiff told

him only that he had a shoulder injury caused by a prior condition.  (Chapman Dep.

at 8.)  Jones testified that she was under the impression that the Plaintiff was suffering

from chest pains or indigestion. (Jones Dep. at 11.)

Approximately an hour later, the Plaintiff stopped by the security desk on his

way out of the building and informed Jones that he had been more seriously injured

than he had previously thought.  Jones testified that it was at this point that she first

learned that the elevator had caused the Plaintiff's injury.  (Id. at 12.)  According to

her testimony, as the Plaintiff was explaining this injury, he pointed in the general

direction of the elevators.  Jones thus presumed that he had been injured by the

elevator next to which she had found him standing, which was no. 11.  (Id. at 11-12.)

At that time, Jones took elevator no. 11 out of service and reported the incident to the

Schindler technician.   The Schindler technician subsequently checked out the

problem, confirmed that the elevator was operating properly, and put it back into

service.  (Id. at 17-22.)

On August 18, 2004, the Plaintiff filed this lawsuit in the State Court of Fulton

County against the Defendants, alleging that they acted negligently in failing to

properly maintain elevator no. 9.  The case was subsequently removed to this Court.

The Defendants now move for summary judgment on the Plaintiff's claims.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. DISCUSSION

### A. Common Law Negligence

The Plaintiff claims that the Defendants acted negligently in their maintenance of the elevator.  Owners and operators of elevators are treated like common carriers, and as such, they must exercise extraordinary diligence to protect the lives and persons of their passengers. O.C.G.A. § 46-9-132; Lane v. Montgomery Elevator Co., 225 Ga. App. 523, 524 (1997).  Extraordinary diligence is defined by the Georgia Code as "that extreme care and caution which very prudent and thoughtful persons

exercise under the same or similar circumstances...[t]he absence of such extraordinary diligence is termed slight negligence." O.C.G.A. § 51-1-3. The Georgia courts are unsettled, however, as to whether Defendant Schindler, as a service company, is obligated to exercise that same level of care. See Lane, 225 Ga. App. at 524-25; Millar Elevator Svc. Co. v. O'Shields, 222 Ga. App. 456, 458 (1996). Regardless of which standard applies, Schindler is subject to a heightened standard in this instance because of the inherent risk of injury posed by elevator travel. Lane, 225 Ga. App. at 525 (citing Millar Elevator Svc. Co., 222 Ga. App. at 456).

Despite the Defendants' heightened duty requirements, however, Georgia courts have made clear that sometimes mechanical devices such as elevators get "out of working order" and become dangerous and cause injury without negligence on anyone's part. Peterson Props. Corp. v. Finch, 235 Ga. App. 86, 86-87 (1998); Ellis v. Sears Roebuck & Co., 193 Ga. App. 797, 797-98 (1989). Elevator operators are not insurers of their passengers' safety against every possible source of danger. Metropolitan Atlanta Rapid Transit Auth. v. Rouse, 279 Ga. 311, 314 (2005).

In order to survive a motion for summary judgment, the Plaintiff must offer some evidence to demonstrate that the Defendants knew or should have known about an alleged hazard. Peterson, 235 Ga. App. at 87. In Peterson, for example, where a plaintiff sued the building manager for injuries suffered on a misleveled elevator, the

court found that the plaintiff failed to meet this standard even though she offered the affidavit of a fellow office worker testifying that she too had tripped on the misaligned elevator.  Id.  The Georgia Court of Appeals found this evidence insufficient because the affidavit did not state: (1) that the worker had notified the defendant; (2) whether the worker fell before or after the date of the plaintiff's injury; and (3) whether the co-worker's injury involved the same elevator.  Id.  In another case where a plaintiff was injured by a misaligned elevator, however, the court rejected the elevator repair company's motion for summary judgment because the plaintiff presented repair and maintenance records showing some leveling problems within five months prior to the plaintiff's injury.  See Lane, 225 Ga. App. at 523.

Several Georgia cases, moreover, have specifically found against liability where the defendant demonstrated a regular practice of inspections and preventative maintenance.  In Rouse v. Metropolitan Atlanta Rapid Transit Auth., 278 Ga. App. 767 (2006), the Georgia Court of Appeals found that summary judgment was proper for the defendants where they could show a pattern of inspection and maintenance on the escalator in question.  It held that the defendants could not be charged with superior knowledge of a defect when an inspection of the escalator earlier the same day revealed no defects or problems.  Id.  Similarly, in Sparks v. Metropolitan Atlanta Rapid Transit Auth., 223 Ga. App. 768 (1996), the court found that the plaintiff failed

to show that the defendants had superior knowledge of a malfunction on an escalator. The defendants presented evidence showing that they conducted regular bi-monthly preventative maintenance on the escalator and that none of the service calls in the month prior to the plaintiff's injury related to the malfunction that caused his injury. Id. at 769.

Here, it is undisputed that the Defendants had a routine and systematic inspection practice regarding the operation and functioning of all of the elevators, including no. 9. First, the on-site security guards performed routine inspections of the operation and performance of the elevators. (Immel Dep. at 14; Jones Dep. at 38-39; Chapman Dep. at 20-21.) Indeed, between 3 and 5 a.m. on January 28, 2003, the date of the incident, John Immel performed an inspection of the elevators and found no problems with any of them. This included the light curtain on no. 9. (Immel Dep. at 66-67.) In addition, Mike Burgess, Schindler's service technician, regularly inspected and checked the operations and functioning of all elevators at the premises, including the hoistway doors, the elevator doors, and the light curtain. (Burgess Dep. at 50-51.) An elevator consultant, Edward McGehee, was also hired by Defendant Childress Klein to evaluate the performance of the elevators. On January 4, 2004, he inspected no. 9 and found the hoistway doors, the elevator doors, and the light curtain to be functioning normally and properly and that the elevator met the requirements of

Safety Code for Elevators and Escalators, ASME A17.1, and the Safety Code for Existing Elevators and Escalators, ASME A17.3.  (McGehee Aff. ¶ 6.)  Finally, on July 31, 2002, and again on February 5, 2003, the elevator inspector for the City of Atlanta, Charles German, inspected elevator no. 9.  He found it to meet all City of Atlanta requirements, including the requirements found in Safety Code for Elevators and Escalators, ASME A17.1, and Safety Code for Existing Elevators and Escalators, ASME A17.3.  (German Aff. ¶¶ 6-7.)  He further reported that the hoistway doors, elevator doors, and light curtain of no. 9 were all functioning normally and properly.  (Id., ¶ 8.)

The Plaintiff claims, however, that the Defendants had knowledge that no. 9 was defective because on certain occasions, the light curtain on an elevator door would not respond to testing by the on-duty security guard during the night shift. Three security guards–John Immel, Miki Jones, and Daniel Chapman–all stated that as part of their nightly testing of the elevators, they would check the proper functioning of the infrared curtain by putting an arm or a leg between the elevator doors as it was closing to ensure that the curtain would sense the presence of an impediment and reopen.  (Immel Dep. at 20; Jones Dep. at 40; Chapman Dep. at 20-21.)  The guards each stated that they had found on certain occasions that the curtain did not sense their presence and would continue to close.  (Immel Dep. at 21; Jones

Dep. at 40; Chapman Dep. at 21, 41.)  Chapman and Immel stated, however, that they would only record this failure on the test sheet and take the elevator out of service if they could repeat it.  (Immel Dep. at 29-32; Chapman Dep. at 23.)  Jones, who only worked the night shift from 1997 to 1999, stated that although she always tested it again to make sure she "hadn't goofed up," she would take it out of service even if she couldn't repeat the error.  (Jones Dep. at 8, 46-47.)  All three further testified that they would always inform the Schindler technician whenever the doors failed to respond. (Immel Dep. at 31-32; Jones Dep. at 46-47; Chapman Dep. at 23.)

The Plaintiff asserts that these unrepeatable malfunctions gave the Defendants knowledge of a defect.  They argue that because there is no evidence to show that Schindler responded in any way to these reports by Immel and Chapman, a triable issue of negligence exists.  The Court does not agree for several reasons.  First, there is no evidence that these incidents occurred in the months prior to the Plaintiff's injury or that the non-responding elevator was no. 9, thus putting the Defendants on notice of the problem.  See Peterson, 235 Ga. App. at 87; Lane, 225 Ga. App. at 523.  Indeed, at least in the case of Miki Jones, she had stopped performing these tests when she began working the day shift in 1999, and there were many inspections by the City of Atlanta and others certifying the safety of elevator no. 9 in between any alleged failure reported by her and the Plaintiff's injury.

Georgia case law, moreover, does not support the Plaintiff's contention that the Defendants are liable based on these isolated and unrepeatable failures.  Even assuming that a single, isolated failure to respond demonstrates a malfunction of the elevator rather than a failure of the tester, showing that a mechanical device such as an elevator was sometimes dangerous and was expected to malfunction is not enough to survive a summary judgment motion.  See Sparks, 223 Ga. App. at 770.  In Sparks, the Court found insufficient the following evidence from the plaintiff: (1) an emergency call log showed that seven calls had been made concerning the escalator; (2) testimony of the escalator service company employee stating that even after being repaired, he expects escalators to break again; and (3) the employee's statement that when an escalator bearing malfunctioned, the repair company routinely replaced only broken bearings, even though replacing the entire bearing assembly would extend the time between problems.  Id.

The Court finds that the evidence presented by the Plaintiff is even less persuasive than that which failed to survive summary judgment in Sparks.  In light of the undisputed evidence demonstrating the Defendants' consistent maintenance of elevator no. 9, their alleged failure to respond to reports of single, unrepeatable malfunctions does not create a triable issue as to their negligence.  Certainly, if these isolated failures had been the result of a defective light curtain in elevator no. 9, the

defect would have been discovered by either Burgess, McGehee, or City of Atlanta Inspector German prior to the Plaintiff's injury.   All three of these individuals certified, however, that no. 9 was operating normally and properly in compliance with the safety code.   The Defendants have thus clearly shown that they could have had no knowledge of any alleged defect prior to the Plaintiff's injury.   Their summary judgment motion is warranted.

      B. Negligence Per Se

The Plaintiff next alleges that the Defendants' behavior constituted negligence per se because they failed to comply with ASME A17.1 standards.   A defendant is liable for negligence per se, or statutory negligence, where a plaintiff shows that the defendant actually violated a safety regulation.   See Bajjani v. Gwinnett County School Dist., 2006 WL 829615, at *5 (Ga. App. 2006) ("[G]enerally, negligence per se arises when a statute or ordinance is violated. The violation of certain mandatory regulations may also amount to negligence per se if the regulations impose a legal duty.").   Rule 112.5 of ASME A17.1 provides that "a power operated car door or gate shall be provided with a reopening device which will function to stop and reopen a car door or gate and the adjacent hoistway door in the event that the car door or gate is obstructed while closing."   (Pl.'s Resp. to Def. Schindler's Mot. for Summ. J., Ex. J.) The next paragraph discusses elevator car doors that have two doors that open from

the center, like those at 999 Peachtree.  The rule states that, "[f]or center opening doors, the reopening device shall be so designed and installed that the obstruction of either door panel when closing will cause the reopening device to function."  (Id.) Here, both Charles German and Edward McGehee testified that their inspections revealed that the door reopening device for elevator no. 9, the light curtain, operated normally and properly and met the requirements of the safety code.  (McGehee Aff. ¶ 6; German Aff. ¶¶ 4-8.) The Plaintiff has presented no contrary evidence showing the elevator was not in compliance with the safety code.  His claim of negligence per se thus fails.

     C. Spoilation

     The Plaintiff's final claim is that the Defendants' failure to report the incident involving the Plaintiff to city or state authorities and take elevator no. 9 out of service constituted a spoilation of the evidence.  Georgia law requires that the owner or lessee of an elevator report an accident causing personal injury to the appropriate inspection authority by noon of the day following the incident.   O.C.G.A.  §  8-2-106(a). Furthermore, the statute provides that "any elevator...involved in an accident...shall be removed from service at the time of the accident. The equipment shall not be repaired, altered, or placed back in service until inspected by a certified inspector for the enforcement authority." O.C.G.A. § 8-2-106(c).  Given that the Plaintiff has failed

to show any negligence on the part of the Defendants, however, the Court finds that any violation of O.C.G.A. § 8-2-106 could not have been the proximate cause of the Plaintiff's injuries.  <u>See</u> <u>Peterson</u>, 235 Ga. App. at 87.  This fails to create a triable issue of fact as to liability.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendant Childress Klein Properties, Inc. and 999 Peachtree Associates, LLP's Motion for Summary Judgment [Doc. 70] is GRANTED and Defendant Schindler Elevator Corp.'s Motion for Summary Judgment [Doc. 74] is GRANTED.

SO ORDERED, this 13 day of July, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge